UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO.: 06-10427 |
| | ) | |
| JEFFREY SHIELDS | ) | |
| | ) | |
| | | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO.: 06-10439 |
| | ) | |
| JOEL WETMORE | ) | |
| | ) | |
| | | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO.: 06-10449 |
| | ) | |
| CHARLES PEAVY | ) | |
| | ) | |

RESPONSE TO OPPOSITION OF THE UNITED STATES
TO RESPONDENTS' MOTION TO DISMISS

**I.     THE GOVERNMENT MISSTATES THE DEFENDANTS' BURDEN ON A FACIAL
        CHALLENGE.**[1]

The government argues that defendants' facial attack fails because they cannot prove that

Congress exceeded its Article I authority as to all possible applications of the Jimmy Ryce Act.

Opp. at 4-9.  Relying primarily on language in United States v. Salerno, 481 U.S. 739, (1987), the

government  seeks to impose a burden on respondents to show that "no set of circumstances exists

under which the Act would be valid."  Id. at 745.  The government misconstrues the narrow import

---

[1]The defendants' will cite to their Motion to Dismiss as "Mem.," and the Government's
Opposition as "Opp."  They will refer to 18 U.S.C. § 4248 as "the Act" or "Section 4248."

of <u>Salerno</u> and ignores subsequent Supreme Court decisions supportive of the appropriateness of a facial challenge.

Constitutional claimants may challenge a statute by arguing that it is invalid on its face - that the statue as a whole is unconstitutional as written. <u>United States v. Lopez</u>, 514 U.S. 549, 559-561 (1995); <u>R. A. V. v. St. Paul</u>, 505 U.S. 377, 436 (1992).   Recently, the Supreme Court has used facial challenges to address statutes where, as here, it is alleged that Congress lacked authority to pass the law.  <u>Lopez</u>, <u>supra</u> (invalidating gun-free schools act for lack of jurisdictional element); <u>United States v. Morrison</u>, 529 U.S. 598 (2000) (invalidating civil remedy portion of Violence Against Women Act as outside Congressional authority).  <u>See</u> <u>also</u> <u>Gonzalez v. Raich</u>, 125 S.Ct. 2195 (2005) (eschewing as-applied challenge to hold Controlled Substances Act facially valid).  These cases demonstrate that facial review is necessary and appropriate where a claimant argues that a statute is unconstitutional, regardless of its possible constitutional application to some small number of individuals.

<u>R.A.V. v. St. Paul</u> further illustrates this.  <u>R.A.V.</u> involved a First Amendment challenge to a city ordinance making it a misdemeanor to display a symbol or other object that "one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender."  <u>Id.</u> at 380.  The Minnesota Supreme Court had given the ordinance a limiting construction, holding that it applied only to "fighting words" - in the case, burning a cross on the lawn of a black family - that could have been proscribed by any number of valid statutes.  <u>Id.</u> at 380 n.1.  The Supreme Court  held the challenged ordinance facially unconstitutional because it discriminated among acts of symbolic speech based on their content.  <u>Id.</u> at 381-395.  This was so even though the claimant's own conduct was constitutionally unprotected.  The Minnesota

2

ordinance was entirely unconstitutional because attempted to drive certain ideas or viewpoints from the marketplace.  Id. at 387.

R.A.V. thus suggests that facial review is appropriate where the overall legislative purpose was impermissible.  As respondents have argued, that is the case here.  Consequently, respondents may argue facial unconstitutionality without regard to the burden of showing all conceivable applications of the Act are unconstitutional.

Furthermore, the government fails to recognize that the Supreme Court has backed away from Salerno's "no set of circumstances" burden.  In Chicago v. Morales, 527 U.S. 41 (1999), a plurality held a gang-loitering ordinance facially unconstitutional on vagueness grounds under the Due Process Clause.  Id. 15 55, 64.  Justice Scalia, in dissent, vigorously insisted that the plurality's disposition ran afoul of Salerno because it was possible to imagine a scenario in which the ordinance's application would not be impermissibly vague.  Id. at 81-83.  In response, the plurality asserted that "to the extent we have consistently articulated a clear standard for facial challenges, it is not the Salerno formulation, which has never been the decisive factor in any decision of this Court, including Salerno itself."  Id. at 55 n.22.

The Supreme Court's retreat from the language in Salerno, along with its telling willingness to entertain facial challenges where, as here, the claim of unconstitutionality concerns Congress' power to legislate, demonstrates that respondents do *not* face the burden of showing that there is "no set of circumstances" under which the Jimmy Ryce Act is constitutional.

II.    THE ACT IS NOT A NECESSARY AND PROPER EXERCISE OF
         CONGRESSIONAL AUTHORITY.

1.    The Act Cannot Be Constitutionally Applied To Incompetent Defendants.

Even if the Salerno standard for facial challenges applies, the Government fails to show that the Act can be constitutionally applied to incompetent defendants.

In Greenwood v. United States, the Supreme Court addressed the constitutionality of predecessor statutes to the current 18 U.S.C. §§ 4241-4247, authorizing the commitment of incompetent persons "charged with or convicted of offenses against the United States."  Greenwood, 350 U.S. 366, 367 (1956).  The Court held that the statutes were a valid exercise of congressional authority under the Necessary and Proper Clause because they facilitated the executive's "power to prosecute for federal offenses" and, in the case before it, that power had not been "irretrievably frustrated" by Greenwood's mental disorder.  Id. at 375.  The Government claims that this holding renders constitutional the application of Section 4248 to incompetent federal defendants.  See Opp. at 5-9.  The Government's discussion obscures the crucial distinction between Greenwood's commitment and the commitment of an incompetent defendant under Section 4248.

In Greenwood, the mental disorder leading to the defendant's commitment was the *same* mental disorder that rendered him incompetent to stand trial.  See generally Greenwood, 350 U.S. 366.  Thus, Greenwood's commitment was Necessary and Proper because it aimed to restore him to competency so that he could face a federal indictment.  Id. at 375.  A Section 4248 commitment, by contrast, need bear no relationship to the mental disorder giving rise to a defendant's incompetence to stand trial.  Unlike the statute in Greenwood, Section 4248 does not contemplate a restoration to competency and consequent prosecution.  Compare Greenwood, 350 U.S. at 369, n. 4 with 18 U.S.C. § 4248.

4

Moreover, the Government reaches beyond the Court's holding in <u>Greenwood</u>, suggesting that the case sanctions the indefinite detention of persons who are found "sexually dangerous to others" under Section 4248. <u>See</u> <u>Opp.</u> at 7-8. The <u>Greenwood</u> Court, however, anchored its holding on its view that Greenwood's commitment *was not* certain to be indefinite – otherwise, it could not have reached the conclusion that prosecution remained a possibility. <u>See</u> <u>Greenwood</u>, 350 U.S. at 375. Thus, any commentary in <u>Greenwood</u> concerning the fate of the *indefinitely* incompetent is dicta.[2]

    2.    <u>The Act Is Not A Necessary And Proper Means Of Preventing Federal Sex Crimes</u>.

The Necessary and Proper Clause does not give unrestricted power to the federal government. <u>See</u> <u>Sabri v. United States</u>, 541 U.S. 600, 612 (2004) (Thomas, J., concurring). Instead, it permits Congress to employ only those means that are "appropriate" and "plainly adapted" to the achievement of an end that is itself constitutional. <u>Id.</u> at 612-13 (<u>quoting</u> <u>McCulloch v. Maryland</u>, 4 Wheat. 316, 421 (1819)). The Government cites a series of cases in an attempt to persuade that Section 4248 is plainly adapted to further Congress' Commerce Clause power to enact federal sex crime laws by preventing possible future violations of those laws. <u>See</u> <u>Opp.</u> at 9-15. Some of the cited cases demonstrate how poorly adapted the Act is to that end, while others are wholly inapplicable to defendants' cases.

For example, the Government relies on <u>United States v. Perry</u>, in which the Third Circuit

---

[2]In any case, the statute in <u>Greenwood</u> limited detention of incurable incompetents to those who posed a danger to "the officers, property, or other interests of *the United States*," <u>Greenwood</u>, 350 U.S. at 369, n. 4 (emphasis added), thus tethering federal authority to a showing of a threat to *federal* interests. Section 4248, on the other hand, authorizes the indefinite detention of incurable incompetents who remain "sexually dangerous to others," without regard to whether they pose a threat to *federal* interests. The Act thus cannot be said to be a necessary and proper means of protecting federal interests. <u>See</u> §§ 4247(a)(6); 4248(e).

upheld, as a necessary and proper means of preventing violations of federal criminal law, a presumption of the Bail Reform Act that certain defendants pose a threat to "the safety of the community" if granted pre-trial release.  See Perry, 788 F.2d 100, 110-11 (3rd Cir. 1986).  The presumption was triggered, however, only when a number of preconditions were met.  Id. at 102-03.[3]  Additionally, the Third Circuit imposed a limiting construction on the statute, interpreting it as intended to prevent only violations of the four federal drug and firearm statutes that could render the presumption applicable to a defendant.  See Id. at 110-11.

Thus, it was only the presence of the several preconditions and the limiting construction of the Bail Reform Act that rendered the presumption a necessary and proper means of preventing specific violations of the federal criminal law, rather than "general welfare" legislation beyond the reach of Congress.  See Id.; See also United States v. Plotts, 347 F.3d 873 (10th Cir. 2003) (upholding DNA collection act as necessary and proper to facilitate executive's prosecution of: 1) persons convicted of; 2) specified federal offenses; and 3) on supervised release).

Section 4248, in contrast, does not require similar limiting conditions for its application.  It applies to any incompetent defendant in the custody of the Attorney General, any defendant against whom charges have been dismissed because of mental disease or defect, or any other prisoner in the custody of the Bureau of Prisons.  See § 4248(a).  No sex related conviction – federal or state – is required for commitment.  No burden of proof is specified for the initial certification, the key statutory terms  "sexually violent conduct" and "child molestation" are not defined by reference to

_____

[3]In Perry's case the preconditions were: 1) the magistrate found probable cause that Perry committed a qualifying federal drug offense punishable by ten or more years imprisonment; 2) Perry was on bail for a state drug distribution offense when the federal offense took place; 3) Perry was under state court supervision for a gun offense conviction at the time the federal offense and the state drug offense were committed.  See Perry, 788 F.2d 100,102-03 (3rd Cir. 1986).

specific federal criminal offenses, and there is no indication in the Act's language or design that Congress intended it to apply only to those who were demonstrably likely to violate specific *federal* sex crimes statutes.  See §§ 4248(a); 4247(a)(5).  Unlike the statutes in Perry and Plotts, in short, Section 4248 is not drafted so that it may be termed appropriate and plainly adapted to the end of enforcing federal sex crimes statutes, and it is thus not a necessary and proper exercise of congressional power.

The Government cites to Gonzalez v. Raich, 545 U.S. 1, 17 (2005) in support of its contention that the wholesale detention of prisoners deemed sexually dangerous is an appropriate means of preventing the possible future commission of federal sex crimes.  See Opp. at 14.  The cited passages in Raich, however, merely articulate the Supreme Court doctrine that intrastate *economic* activities may substantially affect interstate commerce if, taken in the aggregate, they threaten to influence a national *economic* market.  See Raich, 545 U.S. at 17-22.  Two other cases cited by the Government stand for essentially the same proposition.  See Sabri, 541 U.S. at 605-08 (Congress may criminalize bribery of persons or organizations receiving $10,000 or more yearly in federal funds because local corruption undermines integrity of federal funding system); Westfall v. United States, 274 U.S. 256, 258-59 (1927) (upholding Westfall's convictions for crimes involving misapplication of funds from a state bank that belonged to the Federal Reserve system because such intrastate conduct threatened the integrity of the national banking system).  The Government makes no argument that the conduct Section 4248 attempts to forestall is economic in nature.  Any such argument would of course be specious, and the cited line of authority simply does not apply to the defendants' cases.[4]

_____

[4]The Government also cites to Ponzi v. Fessenden, 258 U.S. 254, 262-63 (1922) for the proposition that "necessary" and "proper" ought not to be narrowly understood.  The cited

**III.    THE ACT VIOLATES THE TENTH AMENDMENT**

    1.    <u>The Defendants Have Standing To Raise A Tenth Amendment Challenge</u>.

    The Government maintains that the defendants, as private parties, lack standing to assert a violation of the Tenth Amendment.  <u>See</u> <u>Opposition</u> at 16-17.  Both the Seventh and Eleventh Circuits, as well as two District Courts, disagree with the Government.  <u>See</u>  <u>Gillespie v. City of Indianapolis</u>, 185 F.3d 693 (7th Cir. 1999); <u>Atlanta Gas Light Co. v. United States Dept. Of Energy</u>, 666 F.2d 1359 (11th Cir. 1982); <u>Dillard v. Baldwin County Commission</u>, 53 F.Supp.2d 1266 (M.D. Ala. 1999); <u>Gilliard v. Kirk</u>, 633 F.Supp. 1529 (W.D.N.C. 1986).  In fact, there has been significant disagreement in the lower federal courts, stemming from the antiquated and limited nature of the Supreme Court guidance on which the Government relies, over whether private parties have standing to raise Tenth Amendment claims.  <u>See generally</u>, Ara B. Gershengorn, <u>Private Party Standing To Raise Tenth Amendment Commandeering Challenges</u>, 100 Colum. L. Rev. 1065 (2000); <u>Opp</u>. at 16.

    2.    <u>The Act Is Not An Exercise Of An Enumerated Power And It Encroaches On State Sovereignty</u>.

    As to the Government's argument that the substance of defendants' Tenth Amendment claim

---

passage merely says that it is necessary and proper for the Attorney General, as the ultimate custodian of the federal prisons, to have the authority to transfer a federal prisoner to state court to face pending charges because he is required to take care that the law be faithfully executed. That the power to transfer prisoners to a different location so that they may answer to extant charges is distinguishable from the power to inaugurate an entirely new proceeding, hold a prisoner beyond his date of release, and subject him to an indefinite civil commitment on the grounds that doing so may prevent the commission of a federal crime some time in the future, should hardly require explanation. A more useful passage discussing the meaning of "necessary and proper" may be found in <u>Sabri</u>, 541 U.S. at 610-14 (Thomas, J., concurring).

is without merit, the Government is mistaken on two fronts.

First, the Government's claim that, if the Act is a valid exercise of an enumerated power, there can be no Tenth Amendment violation, is facile.  See Opposition at 18.   In support of this claim, the Government cites to Watters v. Wachovia Bank, N.A., 127 S.Ct. 1559, 1573 (2007).  The passage cited is a summary dismissal of a Tenth Amendment claim that plucks a sentence from a long discussion of Tenth Amendment analysis in Justice O'Connor's New York v. United States, 505 U.S. 144, 156 (1992) opinion.  The full discussion in New York makes clear that the Court, contrary to the Government's assertion, has analyzed claimed violations of the Tenth Amendment *both* by determining whether Congress acted pursuant to an enumerated power *and* by determining whether a statute encroached on an area of sovereignty retained by the states.  See Id. at 155-60.

Second, for the reasons set forth in Argument I (1-5) of their original Motion to Dismiss and in Argument II (1-2), *supra*, the Act is not a valid exercise of congressional power under the Commerce or Necessary and Proper Clauses, and it invades an area of sovereignty retained by the states.  See Id. at 155-60.

## IV.    THE ACT VIOLATES EQUAL PROTECTION

1.    The Act Is Subject To Strict Scrutiny.

While the Government correctly notes that "sexually dangerous persons" and "prisoners" are not suspect classes automatically entitled to heightened scrutiny on equal protection claims, Opp. at 19-20, laws depriving fundamental rights – such as the right to freedom from physical restraint – are subject to strict scrutiny no matter how the classifications for differential treatment are drawn. Contrary to the Government's assertion, this proposition is not based solely on the plurality opinion in Foucha v. Louisiana, 504 U.S. 71 (1992), but rather derives from City of Cleburne v. Leburne

9

Living Center, 473 U.S. 432, 439 (1985) and its progenitors.  See Id. at 440 (mentally retarded persons not suspect class and no fundamental right in zoning ordinance at issue, but strict scrutiny required when "laws impinge on personal rights protected by the Constitution"); Kramer v. Union Free School District No. 15, 395 U.S. 621 (1969) (voting rights); Shapiro v. Thompson, 394 U.S. 618 (1969) (interstate travel); Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942) (sterilization of certain offenders).

The Government's reliance on Jones v. United States, 463 U.S. 354 (1983) is misplaced. Opp. at 20.  Jones merely held that an insanity acquitee need not be afforded the full panoply of rights available to persons subject to civil commitment, largely because "the acquittee has had a right to a jury determination of his sanity at the time of the offense." Id. at 363, n.10.

2.      The Class Of Persons In Federal Custody Is Not Rationally Related To The Purpose Of Incapacitating Sexually Dangerous Persons.

The Government misses the point with its contention that "sexually dangerous prisoners in the custody of the Bureau of Prisons or the Attorney General owing to mental incapacity are not similarly situated with sexually dangerous persons not charged with a federal crime or serving a federal sentence." Opp. at 22.  The problem with the Act is not that it aims at too small a collection of sexually dangerous persons but rather that it subjects all federal prisoners – and nobody else – to possible lifetime commitment in the absence of any nexus between federal prisoners and the sexually dangerous persons the Act seeks to incapacitate.

The Government's reliance on Peterson v. Gaughan, 404 F.2d 1375 (1st Cir. 1968) is misplaced.  Opp. at 22.  Unlike the Act, the Massachusetts statutory scheme in Peterson was "comprehensive" and applied to persons who had been convicted of sex offenses specifically as well

as convicts in the state prisons, where most convicted sex offenders are confined.  See Id. at 1378.

The Government's reliance on Hubart v. Knapp, 379 F.3d 773 (9th Cir. 2004) is likewise unpersuasive.  Opp. at  23.  On habeas review, the court in Hubart did not engage in de novo review of the equal protection issue, but simply affirmed the judgment of the California appellate courts under deferential AEDPA standards.  See Id. at 778-79.

3.      The Act Arbitrarily Imposes Greater Burdens On Mentally Ill Prisoners With A Particular Type Of Disorder.

The Government contends that "sexually dangerous persons are not similarly situated to those who have been hospitalized under section 4246," thereby warranting disparate treatment. Opp. at 24-26.  The Government begins its analysis with the wrong comparison.  Mentally ill prisoners who pose a generic danger to others are similarly situated to mentally ill prisoners who pose a sexual danger to others.  It is precisely the removal of the section 4245 hospitalization requirement and other procedural protections in the case of persons deemed sexually dangerous that offends due process and brings this case under the control of Jackson v. Indiana, 406 U.S. 715 (1992), Baxstrom v. Herold, 383 U.S. 107 (1966), and Humphrey v. Cady, 405 U.S. 504 (1972).

The cases the Government cites for the proposition that there is a legitimate distinction between the mentally ill and the sexually dangerous are inapposite.  Opp. at 25-26.  The issue here is that there is no rational basis to deny certain rights to persons who are mentally ill and sexually dangerous that are otherwise available to persons who are mentally ill and dangerous in some other respect.

V.      THE ACT ESTABLISHES CRIMINAL PROCEEDINGS

11

1.       Congress Intended To Create A Criminal Proceeding.

The Government contends that Section 4248 on its face shows that Congress intended to establish a civil proceeding because: 1) the Act is placed adjacent to other civil commitment provisions; 2) it is irrelevant that the Act is primarily concerned with public safety; and 3) the federal criminal code also contains civil provisions.  See Opp. at 29-31.  Each of these arguments is unpersuasive.

First, the Government's attempt to analogize the placement of Kansas' Sexually Violent Predator Act to Congress' placement of Section 4248 fails.  See Opp. at 29.  Kansas placed its sex offender commitment statute in its *probate* code while Congress placed Section 4248 in the federal *criminal* code next to commitment procedures applicable to *criminal defendants and prisoners*. Compare Kansas v. Hendricks, 521 U.S. 346, 361 (1997) with 18 U.S.C. §§ 4241-4248.  The placement of the statutes would be analogous only if Congress had placed the Act in Title 24 or Title 42 of the United States Code, governing "Hospitals and Asylums" and "Public Health and Welfare," respectively.

Second, the fact that the Act focuses almost exclusively on detention for public safety, and not the treatment of the offender, does demonstrate that it is criminal.[5]  Although it may be true that the preventive detention of the dangerously mentally ill does not "necessarily" constitute criminal punishment, Hendricks, 521 U.S. at 363, where, as here, treatment of the committee is at best a

---

[5]The Government suggests that this is an argument regarding the purpose and effect of the statute, rather than congressional intent.  Opp. at 29.  It would be most accurate to say that this is *also* an argument about the punitive effect of the statute.  But the words that Congress chooses – here, "sexually dangerous *to others*" – must surely be considered "on the face" of the statute and revealing of congressional intent.

secondary concern of the statute and the Government,[6] the "legislative scheme begins to look
punitive."  Id. at 381 (Breyer, J., dissenting).

Third, that Title 18 contains provisions relating to civil proceedings and establishing civil
penalties does not change the fact that it is devoted to "Crimes and Criminal Procedure."
Furthermore, each of the civil statutes the Government cites comes into play only upon the
commission or attempted commission of a violation(s) of the federal criminal law.  See 18 U.S.C. §
981 (forfeiture of assets obtained via money laundering, counterfeiting securities, and other criminal
offenses); 18 U.S.C. § 1345 (enjoining criminal frauds, conspiracies to defraud the United States,
and other crimes); 18 U.S.C. § 1964 (remedies for unlawful racketeering activities); 18 U.S.C. §
2520 (damages for violations of wire, oral, and electronic communications surveillance statutes).

2.      The Act Is Punitive In Purpose And Effect

After a rote comparison of the Act to the statute in Hendricks the Government asserts that
Section 4248 is not so punitive in purpose and effect that it constitutes a criminal law
notwithstanding its civil label.  See Opp. at 31-33.  The defendants examined the Act in light of the
Kennedy v. Mendoza-Martinez factors, 372 U.S. 144 (1963), at length in their Motion to Dismiss.
See Mem. at 33-37.  Here, they will merely point out the flaws in the Government's analysis.

The Government contends that the Act cannot be intended to punish or deter because it
applies only to persons with volitional impairments.  This argument suffers from two problems.

First, if the Government is correct then the Act cannot be applied to persons who have been

---

[6]In its discussion, the Government relegates treatment to a single sentence.  See Opp. at
30.  Moreover, the Government has previously declined to provide any information about the
proposed treatment of sexually dangerous persons, partly on the ground that such information is
not relevant to facial challenges to the Act.

convicted of sex crimes.  A criminal conviction represents a finding of culpability – a determination that the defendant *was* in control of his actions.  Thus, if a sex crime conviction is used to prove the predicate "sexually violent conduct or child molestation" in a Section 4248 proceeding, the Government must either take the position that the conviction was erroneous because the volitionally impaired defendant could not have been criminally responsible, or concede that the defendant is not a "sexually dangerous person" because he can control his urges.  The Government has not endorsed either position.

Second, even if the Act does not serve as a deterrent to volitionally impaired sex offenders at large, it certainly serves as a specific deterrent to the offender committed under it, both by incapacitating him and by discouraging him from reoffending.

The Government also argues that the Act is not punitive because civil confinement of the mentally ill is not regarded as punishment, the duration of confinement is linked to the presence of danger created by the defendant's mental disorder, and the commitment is only potentially indefinite.  The validity of these arguments turns on whether treatment is, in fact, available for the Section 4248 committee.  If no treatment is provided, then the commitment will constitute confinement solely to protect the public and it will be indefinite in every case, barring a spontaneous remission of a committee's mental disorder.  That state of affairs would render the Act a criminal law because it would impose "a regimen which is essentially identical to that imposed upon felons with no need for psychiatric care."  Allen v. Illinois, 478 U.S. 364, 373 (1986).  Because the Government has declined to submit evidence regarding the treatment proposed for Section 4248 committees the record in this case is devoid of any proof  that a Section 4248 committal constitutes anything other than an indefinite prison sentence.

## VI.   THE ACT VIOLATES DUE PROCESS

1.   <u>The Act Violates Due Process Because It Authorizes Indefinite Commitment Of Persons Who Have Never Been Convicted Of Or Charged With A Sex Offense</u>

In its opposition, the Government does little more than summarize the Supreme Court's decisions in <u>Hendricks</u>, <u>Crane</u>, and <u>Allen</u> on the way to a summary conclusion that the Act passes constitutional muster because it requires some "evidence of past sexually violent behavior."  <u>Opp</u>. at 34-38.  The Government fails to engage defendants' elaboration of the reasons why due process requires that the evidence of sexually violent conduct or child molestation must derive from a prior criminal proceeding, a requirement nearly universal among the states and enjoying deep constitutional and prudential roots.  <u>Mem</u>. at 42-46.

2.   <u>The Lack Of A Preliminary Hearing Or "Probable Cause" Determination Renders The Act Unconstitutional</u>[7]

The Government next asserts that defendants' "probable cause" argument fails as a facial challenge because, in theory, it would be possible to complete the statutory commitment and adjudication process prior to a defendant's scheduled release date.  <u>Opp</u>. at 39.  However, as defendants pointed out in their initial papers, <u>Mem</u>. at 46-47, the certification as "sexually dangerous" while in custody is also, itself, a deprivation of liberty that requires a probable cause hearing.

_____

[7]Contrary to the Government's assertion, <u>Opp</u>. at 38, defendants did not waive their due process claim based on the lack of a probable cause hearing.  To facilitate the orderly briefing of the instant motion to dismiss on legal and constitutional grounds, counsel for defendants did agree not to argue that the additional delay in individual proceedings <u>occasioned by that motion</u> violated their rights.  This does not preclude defendants from arguing that the lack of a probable cause determination in the statutory scheme is inherently unconstitutional.

Substantively, the Government relies solely on the Supreme Court's summary affirmance without opinion in Logan v. Arafeh, 346 F. Supp. 1265 (D. Conn. 1972), *aff'd sub nom.*, Briggs v. Arafeh, 411 U.S. 911 (1973), for the proposition that a 45-day detention would be constitutional. Opp. at 39-40.  This reliance is misplaced for three reasons.

*First*, the Act expressly contemplates detentions of up to *75* days before any hearing, well beyond the delay in Logan.  *Second*, the decision in Logan, predicated on the state's ostensibly benevolent motivation, was affirmed prior to the Supreme Court's decision in O'Connor v. Donaldson, 422 U.S. 563 (1975), which held that benevolent motivation cannot be a substitute for procedural safeguards.  See Doe v. Gallinot, 486 F. Supp. 983, 993-94 (C. D. Cal. 1979) (distinguishing Logan on that basis and holding that probable cause hearing must be held within 72 hours of involuntary commitment). *Third,* whatever the continuing viability of Logan, the Supreme Court has made clear since at least Matthews v. Eldridge, 424 U.S. 319 (1976), that due process claims require a case-by-case analysis of the liberty interest at stake, the risk of error, and the Government's interest, including the burden additional procedures would entail.  See Id*.* at 335. Here, as set forth in defendants' initial papers, the liberty interest is fundamental and the risk of error is high; meanwhile, the Government has offered no reason why a probable cause hearing would be unduly burdensome.  Logan*,* in contrast, involved a very different kind of emergency civil commitment scheme where the detainee would receive immediate treatment that could result in release and avoidance of the "stigma" of court proceedings altogether.  See 346 F. Supp. at 1269; See also Luna v. Van Zandt, 554 F. Supp. 68 (S.D. Tex. 1982) (distinguishing Logan and holding that probable cause hearing must be held within 72 hours of involuntary commitment).

    3.      The Act Violates Due Process Because It Does Not Provide For Adequate Notice,

Proof Beyond A Reasonable Doubt, And A Jury Trial.

Much of the Government's argument that the Act's lack of detailed notice, the proof beyond a reasonable doubt standard, and a jury trial is constitutional hinges on its contention that Section 4248 is a civil law not requiring the protections of a criminal proceeding.  See Opp. 40-42.  As noted *supra* and in their Motion to Dismiss, defendants disagree with the Government's contention. For purposes of highlighting the flaws in the Government's due process argument, however, defendants will assume that Section 4248 is a civil law.

The Government's argument chiefly relies on Addington v. Texas, 441 U.S. 418 (1979).[8] From that case, the Government draws the conclusion that the procedural protections of Section 4248 – a clear and convincing standard of proof and a bench trial – adequately protect the committee's rights as weighed against the Government's interest in ensuring public safety.  See Opp. at 42-45.  Material differences in the facts of Addington, however, make it an inappropriate case to compare to a Section 4248 proceeding.

Unlike the statute in Addington, which focused on the welfare of the committee as well as the safety of the community, the Act is almost exclusively concerned with public safety.  Compare Addington, 441 U.S. at 420 with § 4247(a)(5),(6).  Moreover, in Addington it was the committee's *mother* who sought his hospitalization, whereas under the Act proceedings are initiated by bureaucrats having no personal concern for, and little personal knowledge of, the committee.

---

[8]The majority of the other cases cited by the Government are habeas cases from other circuits.  Such cases only require that the federal court determine whether the state court decision from which the petitioner seeks relief was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  The federal court need not agree with the state court's interpretation of federal law, provided it does not run afoul of this standard. See e.g. Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003).  Thus, these cases should not be read as definitive statements of the law in the respective circuits from which they originate.

17

Compare Addington, 441 U.S. at 420 with § 4248(a).  Finally, the Addington Court upheld a clear

and convincing standard of proof in part because an erroneous commitment could be remedied by

"layers of professional review and observation of the patient's condition, and the concern of family

and friends generally..."  Addington, 441 U.S. at 428-29.  The Act mandates only an annual review

of a committee's condition, and bars him from petitioning for release within six months of a court's

determination that he remains sexually dangerous.  See § 4248(e)(1)(B), (h).

Thus, a commitment proceeding under Section 4248 requires detailed notice, proof beyond a

reasonable doubt, and a jury trial because many of the safeguards that assuaged the Addington

Court's concerns about the commitment proceeding in that case are lacking under the Act.  Section

4248 is not a statute centered on the committee's well-being, and the certification process is

initiated by Government employees whose primary concern is public safety, rather than the needs of

the committee.  A committee under the Act may be confined in a federal prison hundreds or

thousands of miles from his family, friends, and home community, and thus cannot rely on them to

help rectify an erroneous commitment.  Formal review of the committee's condition is infrequent.

Finally, the Government has declined to provide this Court with any evidence that "layers of

professional review and observation" are in fact contemplated for Section 4248 committees, and

there is thus no evidence to support its suggestion that the Act offers this protection.[9]

## VII.   THE ACT IS VOID FOR VAGUENESS

As an initial matter, the defendants note that the Government entirely fails to respond to their

arguments that the phrases "sexually violent conduct" and "child molestation" are unconstitutionally

---

[9]Perhaps similar concerns explain why, as the Government points out, half of the states
with sexual offender commitment statutes chose to require proof beyond a reasonable doubt in
their proceedings.  See Opp. at 43, n. 6.

vague.  See Opp. at 46-48.

The Government's response to defendants' other arguments principally consists of a string cite of state cases rejecting vagueness challenges to statutory language similar to that found in Sections 4247 and 4248.  See Opp. at 47.  The Government implies that the state courts deciding these cases found the challenged language sufficiently clear on its face.  See Id.  Many of the cited cases, however, rejected the vagueness claims because the challenged language had previously been defined by other decisions of the courts of the state or by definitional sections of the statutes at issue.  See Peterson v. Gaughan, 404 F.2d 1375, 1377 (1st Cir. 1968) (challenged phrases not unconstitutionally vague because borrowed "almost verbatim from the interpretation placed on them" from another state supreme court and adopted by the Massachusetts Supreme Judicial Court); Westerheide v. State, 831 So.2d 93, 106 (Fla. 2002) (challenged phrases not unconstitutionally vague because defined by statute); In re Young, 857 P.2d 989, 1013 (Wash. 1993) (challenged phrases not unconstitutionally vague because defined by statute).  These decisions thus offer no support for the Government's argument.

## VIII.   THE ACT RELIES ON EXPERT TESTIMONY INSUFFICIENTLY RELIABLE TO SATISFY DUE PROCESS.

The Government advances three responses to defendants' argument regarding the unreliability of the expert testimony required by a Section 4248 proceeding.  See Opp.  At 48-55.

First, the Government spends two pages establishing that "Daubert Did Not Announce a Constitutional Rule."  Opp. At 49.  The Government misunderstands defendants' argument and attacks a straw man.  Defendants do not contend that Daubert or Kumho Tire were constitutionally based decisions.  Defendants' position is that the Act requires the Government to prove that the

19

committee is a "sexually dangerous person" by clear and convincing evidence; expert testimony is required to meet that burden; the available expert opinion on "sexually dangerous" persons is so unreliable that it cannot meet the <u>Daubert</u> criteria for admissibility, which are less demanding than the clear and convincing standard; the available expert opinion hence necessarily falls short of constituting clear and convincing evidence; and introduction of this unreliable expert opinion therefore violates due process. <u>See</u> <u>Mem</u>. at 65-73. Alternatively, defendants maintain that, even if some expert testimony regarding sexual dangerousness is sufficiently reliable to be admitted under <u>Daubert</u>, it still does not rise to the level of clear and convincing evidence and violates due process for that reason. <u>Id</u>.

Second, the Government complains that the defendants' challenge to unreliable expert testimony is premature. <u>See</u> <u>Opp</u>. at 51-52. This argument relies on the Government's mistaken view that defendants have raised an evidentiary, rather than a constitutional, challenge. It fails for the reasons stated, *supra*.

Third, the Government argues that defendants' argument fails on its merits. In support of its position, the Government cites a string of cases, none of which are on point. <u>See</u> <u>Opp</u>. at 53. None of the cases holds that expert testimony regarding sexual dangerousness can rise to the level of clear and convincing evidence. <u>Id</u>. Several of the citations are to cases in which expert testimony on sexual dangerousness was admitted under the now-outmoded <u>Frye</u> standard, which is not at issue here. <u>Id</u>. Even the cases decided under <u>Daubert</u> merely establish that some courts have found expert testimony on sexual dangerousness sufficiently reliable to be admitted into evidence. <u>Id</u>. Although defendants contest that proposition, it is not fatal to their due process claim, as explained, *supra*.

The Government goes on to attack the affidavit of Dr. Daniel Kriegman.  See Opp. at 54-55. The Government suggests that it is "curious" that Dr. Kriegman would employ the methods he critiques.  Id.  A fair reading of Dr. Kriegman's materials clears up the apparent discrepancy.  The affidavit and attached exhibits explain that Dr. Kriegman's education, work, and research have led him to maintain that, based on the current state of scientific knowledge, it is impossible to predict that someone is a "sexually dangerous person" by clear and convincing evidence.  See Aff. of Dr. Daniel Kriegman and supporting materials.  That position does not preclude him from making judgments about the relative merits of one approach to diagnosing sexual dangerousness as opposed to another, even if no extant method can produce evidence reliable enough to satisfy due process.

## CONCLUSION

For the foregoing reasons defendants' Motion to Dismiss should be granted.

JEFFREY SHIELDS
JOEL WETMORE
CHARLES PEAVY
By their attorneys,

/s/ Page Kelley
Page Kelley
   B.B.O. #548237
William Fick
   B.B.O. #650562
Judith Mizner
   B.B.O. #350160
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

/s/ John Swomley
John Swomley
   B.B.O. #551450

Swomley & Associates
227 Lewis Wharf
Boston, MA 02110
Tel: 617-227-9443

July 23, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 23, 2007.

/s/ Page Kelley
Page Kelley