UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO. 06-10427-PBS |
| | ) | |
| JEFFREY SHIELDS | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO. 06-10439-PBS |
| | ) | |
| JOEL WETMORE | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO. 06-10449-PBS |
| | ) | |
| CHARLES PEAVY | ) | |
| | ) | |

**POST-HEARING SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

**Introduction**

At the initial hearing on respondents' motion to dismiss the pending commitment

proceedings which raised various constitutional challenges to the Jimmy Ryce Civil Commitment

Program of the Adam Walsh Child Protection Act (codified at, *inter alia*,18 U.S.C. §§4247 and

4248), this Court requested additional information concerning the following questions:

    1)  whether, if this Court determined that:

      a) a probable cause hearing after certification is constitutionally required; or,

      b) employment of the standard of proof beyond a reasonable doubt is required to

        establish either the sexually violent conduct and/or the prediction of future

sexual dangerousness required for commitment under the statute;

this Court could simply impose such a hearing or standard as a remedy or whether the required

remedy is a declaration that the statute is unconstitutional;

2) whether a jury is constitutionally required and, if not, whether this Court can employ

an advisory jury; and

3) whether a prior conviction is a predicate for commitment in states with sexually

dangerous person commitment statutes.

These questions will be addressed below.

**The Appropriate Remedy for Constitutional Deficiencies in the SDP Commitment Statute (18 U.S.C. §§4247 and 4248) is a Declaration That the Statute is Unconstitutional and Dismissal of the Proceedings**

Defendants have argued that Congress lacked the authority to enact the Jimmy Ryce Civil

Commitment Program.  If this Court so finds, the required remedy is plain; the Program is

unconstitutional in its entirety and the proceedings against all defendants must be dismissed.

Since all defendants have completed their terms of imprisonment, they should be released.

The question of remedy must be addressed if this Court concludes that certain aspects of

the statute, such as the failure to provide for a probable cause hearing after certification and/or

the use of a clear and convincing evidence standard rather than the proof beyond a reasonable

doubt standard for determining whether an individual has engaged in sexually violent conduct,

and/or whether an individual is likely to be substantially unable to refrain from engaging in such

conduct in the future, violate the due process clause of the Constitution.

Neither the Adam Walsh Act nor Section 301 of that Act, the civil commitment program

challenged here, contains a severability clause.  In the absence of such a clause, there is no

2

presumption of severability and the court looks to legislative intent and the functioning of the statute absent the unconstitutional provision.  For example, in *Sloan v. Lemon*, 413 U.S. 825 (1973),  the Supreme Court reviewed a Pennsylvania statute providing tuition reimbursement for parents sending their children to non-public schools.  The statute was enacted after the Court had held that a prior Pennsylvania statute providing reimbursement to non-public schools for their expenditures on teachers' salaries and instructional materials used in specified "secular" courses violated the Establishment Clause of the First Amendment to the United States Constitution. The Court found that the new statute also violated the Establishment Clause, rejecting an argument that it should allow reimbursement to parents of children attending non-public nonsectarian schools by treating the statute as containing a separable provision for such parents. "The statute nowhere sets up this suggested dichotomy between sectarian and nonsectarian schools, and to approve such a distinction here would be to create a program quite different from the one the legislature actually adopted." (*Id.*, at 834).

The Supreme Court subsequently summarized the appropriate framework for evaluating the severability of statutory provisions in *Alaska Airlines Inc. v. Brock*, 480 U.S. 678, 684-685 (1987):

> "[A] court should refrain from invalidating more of the statute than is necessary .... '[W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid.'"... The standard for determining the severability of an unconstitutional provision is well established: "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law."'....
>
> Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently.....

> The more relevant inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the intent of Congress.

*See also*, *Minesota v. Mille Lac Band of Chippewa Indians*, 526 U.S. 172, 191-194  (1999) (applying severability analysis to an executive order and concluding that the order was not severable). The Court first substituted an examination of executive intent for legislative intent. Examining that intent, the Court found that the order "embodied a single, coherent policy", that it was intended "to stand or fall as a whole", and that  "embodying as it did one coherent policy,[the order] is inseverable."

A majority of the Supreme Court took a somewhat different approach in *United States v. Booker*, 543 U.S. 220 (2005).  A majority of the Court declared that the mandatory application of the sentencing guidelines violated the Sixth Amendment.  A different five members of the Court (the "remedy majority") framed the remedy inquiry by examining legislative intent, seeking to determine "what 'Congress would have intended' in light of the Court's constitutional holding" (*id.*, at 246).  Thus, the remedy majority asked: Were the guidelines as a whole inapplicable, should the jury trial requirement be added to the sentencing guidelines or should certain provisions be severed and excised to make the guidelines advisory?  The remedy majority concluded, based on its view of Congress' basic statutory goal, that Congress would not have passed the same sentencing act with a jury trial requirement and that it would have preferred total invalidation to the engrafting of a jury for findings of fact used to enhance sentences, but that it would have preferred severance and excision of provisions rendering the guidelines mandatory to total invalidation.  The four remedy dissenters disagreed with this severability analysis, questioning whether severability analysis applied at all to the *Booker* rights majority ruling.  *See*

*also Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328-331 (2006) (recognizing *Booker* approach as alternative remedy, but also stating that "...the touchstone for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislation.'" (*id.*, at 330); *Rita v. United States*, 127 S.Ct. 2456, 2483, n.7 (2007) ("Courts have no power to add provisions that might be desirable now that certain provisions have been excised.")(Scalia, J., concurring).

In this case, respondents submit that the procedures set out in the statute must be viewed as an integrated whole. As set out in respondents' memorandum in support of their motion to dismiss, both a probable cause hearing and the use of a beyond a reasonable doubt burden of proof are constitutionally required.   Yet, Congress did not provide for such protections, and there is no indication of any Congressional intent to do so. Indeed, by expressly providing for the use of a clear and convincing standard of proof in 18 U.S.C.§4247(d), Congress evinced an intent to the contrary.  Rather than engrafting procedural protections to comply with the constitutional mandates of due process, this Court must declare the statute to be unconstitutional.

**This Court May Employ an Advisory Jury**

Respondents have argued that a jury trial is required whether these proceedings are deemed criminal or civil.  If this Court concludes that proceedings under the statute are criminal, the Sixth Amendment mandates a jury trial.  If this Court concludes that proceedings under the statute are civil, the due process mandate of the Fifth Amendment requires a jury trial.  If this Court concludes that the proceedings are civil, but that a jury trial is not constitutionally required, an advisory jury could be empaneled pursuant to Rule 39(c) of the  Federal Rules of Civil Procedure, which provides:

**c) Advisory Jury and Trial by Consent.** In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

The court must make and explain its own independent findings of fact and conclusions of law even where an advisory jury has rendered a verdict. *See* Fed.R.Civ.P. 52(a) (2003). *See N.A.A.C.P. v. Acusport, Inc.*, 271 F.Supp.2d 435, 467-476 (E.D.N.Y. 2003) for discussion of the advisory jury.

**The Vast Majority of State Sexual Offender Commitment Statutes Provide Greater Due Process Protections than Sections 4247-4248 by Requiring a Sex Offense Conviction, Proof Beyond a Reasonable Doubt of Sexually Dangerous Person Status, or Both, as a Predicate to Commitment**

Twenty-two states have enacted sex offender commitment statutes, either separately from their general mental health commitment statutes or, in the cases of Minnesota and New Mexico, as part of the general mental health commitment scheme.[1]

Of those twenty-two states, seven require *both* a conviction of a sex offense, or a "sexually motivated" offense, *and* proof beyond a reasonable doubt of sexual dangerousness as a

---

[1]    In Minnesota a "sexual psychopath" or "sexually dangerous person" is subject to the provisions of the general mental health commitment process as a "person who is mentally ill and dangerous to the public."  M.S.A. §§ 253B.02(18a),(18b),(18c).

New Mexico's Mental Health and Developmental Disabilities Code defines "likelihood of serious harm to others" to mean, *inter alia*, that is is "more likely than not that in the near future a person will...commit a criminal sexual offense, as evidenced by behavior causing, attempting, or threatening such harm..."  The code defines "mental disorder" as a "substantial disorder of a person's emotional processes, thought or cognition that grossly impairs judgment, behavior or capacity to recognize reality..."  <u>See</u> N.M.S.A. 1978 § 43-1-3(N),(O).

predicate to commitment in most circumstances.[2]  See A.R.S. §§ 36-3701(7) & 36-3707(A)

(Arizona); Cal. Welf. & Inst. Code §§ 6600(a)(1)& 6604 (California); 725 ILCS 207/5(f) &

207/35(d)(1) (Illinois)[3]; M.G.L.A. 123A §§ 1 & 14 (Massachusetts); Code 1976 §§ 44-48-30(1)

& 44-48-100(A) (South Carolina); V.T.C.A., Health & Safety Code §§ 841.002(8),

841.003(a),(b) & 841.062(a) (Texas); W.S.A. 980.01(7) & 980.05(3)(a) (Wisconsin).

Seven states require conviction of a sex offense *and* proof of sexual dangerousness by

clear and convincing evidence as a predicate to commitment.[4]  See F.S.A. §§ 394.912(10) &

394.917(1) (Florida); V.A.M.S. 632.480(5)(a) & 632.495(1) (Missouri); NE ST §§ 83-174.01(1)

& 71-1209(1) (Nebraska); N.H. Rev. Stat. §§ 135-E:2(XII)(a) & 135-E:11(I) (New Hampshire);

N.J.S.A. 30:4-27.26 & 30:4-27.32(a) (New Jersey); O.R.S. §§ 426.510 & 426.670 & 426.675(1)

(Oregon); Va. Code Ann. §§ 37.1-70.1 & 37.1-70.9(C)(Virginia).

Four states do not require a conviction for a sex offense, but *do* require proof of sexual

dangerousness beyond a reasonable doubt.  See 725 ILCS 205/1.01 & 205/3.01 (Illinois); I.C.A.

---

[2]  Some of the states omit the requirement of a conviction for persons charged with a sex offense but found not competent to stand trial, and/or for persons found not guilty by reason of insanity.  See, e.g., W.S.A. 980.01(7)(Wisconsin).

[3]  Illinois has enacted two separate statutes providing for the commitment of sex offenders.  Section 207/5 et. seq., cited *supra*, applies to persons who are not incarcerated or charged with a sex offense at the time that a "sexually *violent* person" petition is filed against them.  Section 205/1.01 et. seq., cited *infra*, applies to persons charged with a sex offense at the time that a "sexually *dangerous* person" petition is filed against them.  Section 205/1.01 et. seq. does not require a conviction of the pending sex offense as a predicate to commitment, but *does* require proof beyond a reasonable doubt of sexual dangerousness.  See 725 ILCS 205/3.01.

[4]  Again, some of these states dispense with the requirement of a conviction for those found not competent to stand trial on a sex offense, or found not guilty by reason of insanity of a sex offense.  See, e.g., Va. Code Ann. § 37.2-900 (Virginia).

§§ 229A.2(11) & 229A.7(5) (Iowa); K.S.A. §§ 59-29a02(a) & 59-29a07(a) (Kansas); RCWA

71.09.020(16) & 71.09.060(1) (Washington).

Thus, seventeen of the state statutes – *more than 75%* of all of the sex offender

commitment laws enacted by the states – require greater due process protections as a predicate to

commitment than do 18 U.S.C. Sections 4247 and 4248, either by requiring a sex offense

conviction as a predicate to commitment, proof beyond a reasonable doubt of sexual

dangerousness, or both.  In contrast, a mere five states have passed statutes with the meager due

process protections – no requirement of a sex offense conviction, and proof of sexual

dangerousness only by clear and convincing evidence – found in Sections 4247 and 4248.  See

DC ST §§ 22-3803(1) & 22-3808 (District of Columbia)[5]; M.S.A. §§ 253B.02(18a),(18b),(18c)

& 253B.09(1) (Minnesota); N.M.S.A. 1978 §§ 43-1-3(N),(O) & 43-12(C)(New Mexico); NY ST

---

[5]  The District of Columbia statute does not contain an explicit burden of proof for a
finding of sexual dangerousness, requiring only that the court "determine" whether the person
before it is a "sexual psychopath."  DC ST § 22-3808.  Millard v. Harris, 406 F.2d 964,977 (U.S.
App. D.C. 1968), interpreted the statute to require a finding that the person would likely, or
probably, commit sexually aberrant acts causing serious harm in the future.  To the extent that
this interpretation might be read to authorize a lesser burden of proof than clear and convincing
evidence it is, of course, in conflict with Addington v. Texas, 441 U.S. 418, 433 (1979) (clear
and convincing evidence standard constitutionally required in civil commitment proceedings).

M.S.A. §§ 10.03(e),(g) & 10.07(d) (New York); ND ST 25-03.3-01(8) & 25-03.3-13 (North

Dakota).

Respectfully submitted
JEFFREY SHIELDS
JOEL WETMORE
CHARLES PEAVY
By their attorneys,


/s/Judith Mizner
Judith Mizner
B.B.O. #350160
Page Kelley
B.B.O. #548237
William Fick
B.B.O. #650562

Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061


/s/ John Swomley
John Swomley
B.B.O. #551450
Swomley & Associates
227 Lewis Wharf
Boston, MA 02110
Tel: 617-227-9443

October 1, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 1, 2007.


 /s/ Judith Mizner

Judith Mizner


10