UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>JEFFREY SHIELDS,<br>(Reg. No. 10760-036),<br><br>Respondent. | Misc. No. 06-10427 PBS |
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>JOEL WETMORE,<br>(Reg. No. 10379-036),<br><br>Respondent. | Misc. No. 06-10439 PBS |
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>CHARLES PEAVY,<br>(Reg. No. 24545-050),<br><br>Respondent. | Misc. No. 06-10449 PBS |

**SUPPLEMENTAL MEMORANDUM OF THE UNITED STATES**

The United States of America, by and through its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, hereby provides this supplemental memorandum which

addresses certain issues that were raised during the hearing in these related actions on September 17, 2007.

1.  **Federalism Challenge**

In our opposition to the respondents' consolidated motion to dismiss, we showed that the enactment of section 302(4) of the Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, Title III, § 302(4), 120 Stat. 620 (July 27, 2006), codified at 18 U.S.C. §4248, was a valid exercise of Congressional authority pursuant to the Necessary and Proper Clause. Thus, for example, in upholding the constitutionality of the Bail Reform Act, 18 U.S.C. §3142(e) -- which provides for civil commitment for 'the safety of the community'" by requiring the detention of person before trial, and which further creates a presumption for persons charged with one of four drug trafficking offenses or firearm felonies that "no condition or combination of conditions will reasonably assure * * * the safety of the community" therefore requiring detention of the person before trial -- the Third Circuit unanimously found the legislation to be a valid exercise of Congressional authority under the Necessary and Proper Clause, explaining that, "because Congress has the power to proscribe the activities in question, it has the auxiliary-authority, under the necessary and proper clause, to resort to civil commitment to prevent their occurrence."  United States v. Perry, 788 F.2d 100, 110 (3d Cir. 1986).

We briefly note here that, although the Supreme Court has not expressly addressed this question, this conclusion finds support in the Court's decision in United States v. Salerno, 481 U.S. 739 (1987).  In that case, which also involved a constitutional challenge to the pretrial detention provisions of the Bail Reform Act, the Court concluded that the Act did not constitute a facial violation of substantive due process because the detention imposed by the Act constituted a

permissible regulation (as opposed to an impermissible punishment), and that "Congress instead perceived pretrial detention as a potential solution to a pressing societal problem. There is no doubt that preventing danger to the community is a legitimate regulatory goal." Id. at 747 (internal citations omitted).

Of particular note, the Court reached this conclusion notwithstanding Justice Marshall's argument in dissent that the Bail Reform Act violated principles of federalism. In particular, Justice Marshall argued that, even if preventing danger to the community was a worthy regulatory goal, it was a goal that could not be pursed by the federal government:

> Preventing danger to the community through the enactment and enforcement of criminal laws is indeed a legitimate goal, but in our system the achievement of that goal is left primarily to the States. The Constitution does not contain an explicit delegation to the Federal Government of the power to define and administer the general criminal law. The Bail Reform Act does not limit its definition of dangerousness to the likelihood that the defendant poses a danger to others through the commission of federal crimes. Federal preventive detention may thus be ordered under the Act when the danger asserted by the Government is the danger that the defendant will violate state law. The majority nowhere identifies the constitutional source of congressional power to authorize the federal detention of persons whose predicted future conduct would not violate any federal statute and could not be punished by a federal court. I can only conclude that the Court's frequently expressed concern with the principles of federalism vanishes when it threatens to interfere with the Court's attainment of the desired result.

Id. at 759 n.4 (Marshall, J., dissenting). That the Court upheld the Bail Reform Act notwithstanding Justice Marshall's assertion that ir was beyond the scope of Congressional authority provides substantial support to the position advanced here by the United States.

**2. Probable Cause Hearing**

At the hearing, the Court inquired whether it could interpret the Act to require a probable cause hearing within a specified time period to avoid constitutional doubts. While we do not believe that the Act poses constitutional doubts under principles of procedural due process, particularly in the context of a facial challenge, we believe that this Court would have that authority consistent with the Supreme Court's reasoning in Zadvydas v. Davis, 533 U.S. 678 (2001), in which the Supreme Court interpreted 8 U.S.C. §1231(a)(6), which authorized detention of aliens pending their removal, to impose time limits on detention of aliens held for certain reasons stated in the statute on the ground that allowing indefinite detention of lawfully admitted aliens would raise grave constitutional doubts. Id. at 696-99. The Court therefore held that the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal was six months; after that, the alien is eligible for conditional release if he can demonstrate that there is "no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

**3. Severability**

At the hearing, the Court also inquired as to whether any of the challenged provisions of the Act, most particularly the clear and convincing burden of proof, could be severed. The answer is yes. The Supreme Court has held that "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987) (citations omitted). There is ample indication that Congress would have enacted the Act independently of the "clear and convincing evidence" standard of proof.

The Act provides:

> In relation to a person who is in the custody of the Bureau of Prisons, * * * the Attorney General or any individual authorized by the Attorney General or the Director of the Bureau of Prisons may certify that the person is a sexually dangerous person, and transmit the certificate to the clerk of the court for the district in which the person is confined.  The clerk shall send a copy of the certificate to the person, and to the attorney for the Government * * * The court shall order a hearing to determine whether the person is a sexually dangerous person.  A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

18 U.S.C. §4248(a).  Thus, the Act authorizes the Attorney General or any individual authorized by the Attorney General or the Director of the Bureau of Prisons to initiate civil commitment proceedings by certifying that a person in federal custody is a "sexually dangerous person" and transmitting the certificate to the district court in which the inmate is confined.  Upon the filing of the certificate, the court must order a hearing to determine whether the person is a "sexually dangerous person," and the person's release must be stayed pending completion of the section 4248 proceedings.  There is no indication that Congress would not have enacted the remainder of the Act absent the "clear and convincing evidence" burden of proof.  Even if proof beyond a reasonable doubt were required, the Act would fulfill Congress's purpose that persons who have been certified to be sexually dangerous persons not be released pending a hearing.

### 4. Advisory Jury

The Court may utilize an advisory jury under Fed. R. Civ. P. 39(c).

### 5. Treatment

The Bureaus of Prisons reports the following regarding treatment for inmates who have been certified under 18 U.S.C. §4248

- At FCI Butner in North Carolina, certified inmates are housed separately from sentenced inmates, although they have some incidental contact with sentenced inmates, including during meals and recreation.

- At FMC Devens, there are only ten certified inmates, and they have agreed to be housed with sentenced inmates. If a certified inmate does not want to be housed with sentenced inmates, he is offered housing in a segregated housing unit.

- There is no formal sex offender treatment program for certified inmates, as it has not been ordered by a court.

- At FCI Butner, psychology staff have monthly meetings with certified inmates and offer them relevant ancillary treatment services, such as cognitive restructuring and substance abuse treatment.

- At FMC Devens, certified inmates may request individualized treatment services, including counseling and psychiatric services.

- Several certified inmates at FMC Devens have requested and received treatment services. To date, all certified inmates at FCI Butner have declined services.

- Presently, there are no inmates committed as sexually dangerous persons.

- Sex offender treatment will be provided to inmates committed as sexually dangerous persons.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Mark T. Quinlivan
RAYFORD A. FARQUHAR
MARK T. QUINLIVAN
MARK GRADY
Assistant U.S. Attorneys
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3606

Dated: October 1, 2007